Terry L. DAVIS, Administrator for the Estate of Ronald D. Davis, Deceased, and Terry D. Davis and Jacqueline D. Davis, Individuals, Plaintiffs,

v.

The CITY OF ELLENSBURG, a municipal corporation, and Joseph K. Newbry; Michael A. DeLozier and William J. Hutton, Defendants.

No. C–86–072–JLQ.

United States District Court, E.D. Washington.

Jan. 16, 1987.

J. Adam Moore, Rick L. Hoffman, Yakima, Wash., for plaintiffs.

Mark A. Marsing, Yakima, Wash., for defendants.

### ·ORDER ON MOTIONS

QUACKENBUSH, District Judge.

BEFORE THE COURT are five (5) motions in the above-captioned case, heard with oral argument December 22, 1986. They are: defendants' Motion to Dismiss or

in the Alternative to Stay the Proceedings (Ct.Rec. 25); defendants' Motion for Summary Judgment (Ct.Rec. 29); plaintiffs' Motion to Stay Consideration of Summary Judgment and Affidavit Pursuant to Rule 56(f) (Ct.Rec. 64); plaintiffs' Motion to Require Production of Records for Inspection and Copying (Ct.Rec. 58); and plaintiffs' Motion for Medical Examination of Defendants Joseph K. Newbry and William J. Hutton (Ct.Rec. 40). Appearing for defendants was Mark A. Marsing. Representing plaintiffs were J. Adam Moore and Rick L. Hoffman.

This case was brought under 42 U.S.C. § 1983 and various state survival and wrongful death statutes. It arose from the death of Ronald D. Davis after an arrest by the defendant police officers, employees of the City of Ellensburg. Plaintiffs allege that the officers used unreasonable and excessive force in making an illegal arrest and were deliberately indifferent to Mr. Davis' medical needs, including failure to detect a plastic "baggie" of marijuana that was· lodged in his airway. Plaintiffs' claims against the city allege that the officers acted "pursuant to the customs and practices of the Ellensburg Police Department" and that

said custom and practice, effectuated through improper training, policymaking, supervision and discipline, caused the individual defendant and other officers at the scene to approach plaintiff without justification and/or use unreasonable, excessive and reckless force and inattention depriving RONALD L. [sic] DAVIS of his liberty and life in violation of the United States Constitution, Amendments IV and XIV.

Complaint, Count II, paragraph 12.

### MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

In making their Motion to Dismiss or in the Alternative to Stay the Proceedings, defendants contend that this court lacks subject matter jurisdiction because any alleged negligence on the police officers' part is not actionable under § 1983. *Daniels v.*

*Williams,* —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 106 S.Ct. 668 (1986). Defendants also contend there are insufficient allegations in regard to any claimed misuse of the defendant policemen's power of arrest and the reasonableness of the force used to arrest Mr. Davis. In their motion for summary judgment, defendants argue an absence of genuine issues of material fact regarding these issues.

Discussing the alleged liability of the city, defendants argue that there is an insufficient allegation and showing that the conduct at issue implements or executes the city's policy or custom, *see, Monell v. Dept. of Social Services,* 436 U.S. 658, 690–691, 98 S.Ct. 2018, 2035–2036, 56 L.Ed.2d 611 (1978); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 2433–2437, 85 L.Ed.2d 791 (1985), and further that state tort remedies provide adequate post-deprivation redress under *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

Defendants next argue plaintiffs' lack of standing to bring their § 1983 claims with reference to the state's wrongful death statutes, and that although entitled to sue under Washington's survival statute, R.C.W. 4.20.046, plaintiffs are subject to the statutory preclusion of damages for "pain and suffering, anxiety, emotional distress, or humiliation personal to and suffered by a deceased...." Moreover, defendants contest plaintiffs' claim of a constitutionally-protected interest in their relationship to their son.

Finally, defendants claim that in the event the court declines to dismiss, it should defer to the prior state court action in Kittitas County. Defense counsel stated in oral argument that plaintiffs had submitted their case to the state court in 1984, and should not be able to effectively accomplish a "removal" to the federal court by subsequently filing a parallel federal action.

Plaintiffs' counsel in oral argument stated that this action was not brought for the police officers' negligence but for their deliberate indifference and recklessness in making an unlawful seizure under the fourth amendment. Referring to the record on file and citing the affidavit of Dr. Ben Menke (Ct.Rec. 55), plaintiffs contend that a "multitude of significant factual issues" are implicated in the questions of "probable cause, reasonable suspicion, subjective necessity for force, deliberate indifference to medical needs, reckless supervision and training" which are at the core of plaintiffs' case (Ct.Rec. 54, p. 9). Plaintiffs argue that none of these questions "can be factually founded absent an assessment of credibility; and summary judgment may not be granted where credibility is, or may be crucial." (*Id.* at p. 10).

> Plaintiffs' theory as to the city's liability ... is not grounded upon the inference of policy or custom from a single incident of force. Plaintiffs contend that a trier of fact could find that the City inadequately supervised its police officers or had a "persistent and widespread practice of misconduct which had gained the force of custom."

Ct.Rec. 52, p. 7, incorporating Plaintiffs' Supplemental Memorandum in Opposition to Motion for Summary Judgment, Ct.Rec. 54, p. 23.

Plaintiffs also request that consideration of the city's *Monell* liability be stayed pending the receipt of further discovery, arguing that defendants have exclusive knowledge of certain critical information. *See,* Plaintiffs' Motion to Stay Consideration of Summary Judgment and Affidavit Pursuant to Rule 56(f), Ct.Rec. 64.

Plaintiffs urge this court to fashion a remedy under the state survival and wrongful death statutes as was done in *Guyton v. Phillips,* 532 F.Supp. 1154 (N.D. Cal.1981) and *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir.1984), disregarding statutory limitations on plaintiffs' recovery or standing as inconsistent with the deterrence purpose of § 1983. Plaintiffs assert that defendants' reliance on *Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978), in which an action for damages was abated under Louisiana's sur-

vival statute, is misplaced because in the present case—as distinguished from *Robertson*—the alleged deprivation of constitutional rights was the cause of the plaintiff decedent's death. *See,* 436 U.S. at 594, 98 S.Ct. at 1997.

Finally, plaintiffs argue that the court should decline to abstain in light of the state court proceedings, citing the Ninth Circuit's reference to the "unflagging obligation" of the federal court to exercise its jurisdiction in the absence of exceptional circumstances, an obligation which is "particularly weighty when those seeking a hearing in federal court are asserting ... their right to relief under 42 U.S.C. § 1983." *Tovar v. Billmeyer,* 609 F.2d 1291, 1293 (9th Cir.1980), citing *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817–818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

Considering the factors delineated by the Supreme Court in *Colorado River* and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983), which have been applied to § 1983 actions by the Fifth Circuit in *Signad, Inc. v. City of Sugar Land,* 753 F.2d 1338, 1340 (5th Cir. 1985), and by the Sixth Circuit in *Crawley v. Hamilton County Commissioners,* 744 F.2d 28, 31 (6th Cir.1984), plaintiffs argued that federal as well as state law will apply in this case; neither court has assumed jurisdiction over any *res* or property; the federal forum would avoid the effects of prejudicial publicity in Ellensburg; a federal forum would avoid piecemeal litigation; and although the state action was filed first, there has been far less progress in that case than in the federal suit.

Defendants' Memorandum in Support of Motion to Dismiss (Ct.Rec. 27) states that plaintiffs' complaint "alleges insufficient facts to support a claim against any defendant under Section 1983," and that "[t]he claim filed by plaintiffs fails to state a section 1983 action." However, dismissal for failure to state a claim is proper only when it appears to a certainty that the plaintiffs can prove no set of facts in sup-port of their claims that would entitle them to relief. *King v. State of California,* 784 F.2d 910, 912 (9th Cir.1986).

■ Plaintiffs have properly stated a claim under § 1983 if they have alleged facts which, if proved, would establish a constitutional deprivation. *Rutherford v. City of Berkeley,* 780 F.2d 1444, 1446–48 (9th Cir.1986). An arrest without probable cause gives rise to an action for damages under the fourth amendment, applicable to the states through the fourteenth. *McKenzie v. Lamb,* 738 F.2d 1005, 1007 (9th Cir.1984). Moreover, even if a police officer has probable cause to effect an arrest, excessive force used in the seizure of a person may constitute a fourth amendment violation. *Id.* at p. 1011; *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Under the circumstances at bar, the court is unable to find that "it appears beyond doubt the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *McRorie v. Shimoda,* 795 F.2d 780, 783 (9th Cir. 1986), and thus defendants' Motion to Dismiss must be DENIED.

Summary judgment is granted where, viewing the evidence and the inferences arising therefrom in favor of the non-movant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Cardwell v. Kurtz,* 765 F.2d 776, 778 (9th Cir.1985). The initial burden of showing the absence of material fact rests with the movant; "[o]nce that burden is met, however, the opponent must counter with specific factual allegations revealing a genuine issue of fact...." *Int. Union of Bricklayers, etc. v. Jaska,* 752 F.2d 1401, 1405 (9th Cir.1985). Furthermore, as plaintiffs note, in regard to the existence of probable cause to arrest, "in a § 1983 action the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury; and summary judgment is appropriate only if no reasonable jury could find that the officers did or did not have probable cause to ar-

rest." *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir.1984).

In the case at bar, it is clear that plaintiffs are not relying on the negligence standard, and thus *Daniels, supra,* is not implicated. Furthermore, numerous factual disputes preclude summary judgment under Rule 56(c). The issue of probable cause is central to the legality of the arrest made by the individual defendants herein and of the force used by the policemen. Defendants observe that under Washington law, an officer is authorized to use all necessary force to effect an arrest if the suspect flees or forcibly resists, provided that the suspect has notice of the intention of officers to arrest him. R.C.W. 10.31.-050. However, it appears to the court that material issues regarding notice as well as the degree and timing of the decedent's alleged resistance present questions for the jury, which must assess credibility of the witnesses.

Defendants urge application of *Parratt,* and would require that plaintiffs avail themselves of the post-deprivation remedies in state tort law. While *Parratt* involved a loss of property rather than an alleged deprivation of life or liberty, and its concurring opinions sought to limit its scope to property deprivations, 451 U.S. at 527, 101 S.Ct. at 1908, *Parratt* has not been so limited. *See, State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1147 (7th Cir.1983).

However, *Parratt* does not apply to intentional deprivations of liberty rising to the level of substantive due process violations. *McRorie v. Shimoda*, 795 F.2d 780, 785 (9th Cir.1986). As the *McRorie* court observed, while a procedural due process violation, such as a random and unauthorized deprivation of property, does not occur until the state deprives the individual of a procedure for redress, a substantive deprivation of a liberty interest results in a due process violation "at the moment the intentional injury to the interest occurs."

Property's susceptibility to being restored or replaced after a temporary deprivation supports a policy of allowing the state to try to remedy the loss before the deprivation becomes a constitutional violation. Liberty, however, is not restorable or replaceable; a liberty deprivation is permanent.

*Id.* at 786.

This analysis is particularly compelling where an alleged deprivation has resulted in loss of life. *Parratt* does not bar this action.

Defendants also contend there has been an insufficient showing of the city's liability under *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), to withstand summary judgment. *Monell* requires that plaintiff demonstrate that the conduct at issue implements or executes an official municipal policy, or represents a government custom which has not received formal approval from the government. *Id.* at 690–691, 98 S.Ct. 2035–2036. A subsequent case, *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), stated that *Monell*'s requirement "was intended to prevent the imposition of municipal liability under circumstances where no wrong could be ascribed to municipal decisionmakers." *Id.* 105 S.Ct. at 2435. The Ninth Circuit, considering whether a municipal policy caused an alleged constitutional deprivation, analyzed *Tuttle* as "break[ing] the causation analysis under *Monell* into two distinct inquiries." *Kirkpatrick v. City of Los Angeles*, 803 F.2d 485 (9th Cir.1986).

When the municipal policy is unconstitutional on its face because it precludes consideration of the relevant constitutional factor, ... then the causal relationship between the municipal policy and the constitutional tort is evident even if only one constitutional tort is proved. When, however, the municipal policy simply admonishes municipal employees to act reasonably in considering a range of factors, the connection between municipal policy and the constitutional deprivation is not clear. When the latter type of municipal policy exists a section 1983 claimant must provide "considerably

more proof than the single incident ... to establish both the requisite fault on the part of the municipality, and the causal connection between the policy and the constitutional deprivation."

*Id.* at 492.

In the case *sub judice,* however, the court has determined to defer ruling on defendant's motion for summary judgment on the City of Ellensburg's *Monell* liability until plaintiffs have completed their discovery. *See,* court's discussion of plaintiff's Motion to Require Production of Records, Ct.Rec. 58, and Motion to Stay Consideration of Summary Judgment, Ct. Rec. 64, *infra.*

Turning to the question of standing, defendants acknowledge that the law of the forum state is applied to determine whether an action under § 1983 survives for the benefit of the estate, *Robertson v. Wegmann,* 436 U.S. 584, 589–590, 98 S.Ct. 1991, 1994–1995, 56 L.Ed.2d 554 (1978), and that under Washington law, a general survival statute permits a personal representative to bring an action on behalf of the estate for specified damages. R.C.W. 4.20.046. However, aside from the statutory preclusion of damages for pain and suffering and emotional distress, which defendants argue applies in a § 1983 action, defendants contend:

—plaintiffs' cause of action under R.C.W. 4.20.010–.020 cannot be maintained because it is not a survival statute, but a new and original cause of action;

—plaintiffs' cause of action under R.C.W. 4.20.060 cannot be maintained because although a survival statute, it requires that decedent's parents in bringing the suit allege prior dependency on the decedent, which has not been done;

—similarly, R.C.W. 4.24.010 is not a survival statute but a new cause of action, and moreover it requires parental dependency;

—there is no constitutionally protected right of parents to the companionship, custody, aid or support of their children, and thus plaintiffs' claim of familial association under § 1983 must fail.

Ct.Rec. 27, pp. 9–11.

The court agrees with plaintiffs that *Robertson* is distinguishable from the case at bar. In *Robertson,* the Court stated it was "intimat[ing] no view ... about whether abatement based on state law could be allowed in a situation in which deprivation of federal rights caused death." 436 U.S. at 594, 98 S.Ct. at 1997. The Supreme Court "has yet to make a specific pronouncement on the existence of a federal rule allowing the estate of victims killed under color of state law to recover for loss of life in a Section 1983 action notwithstanding restrictive state law." *Bell v. City of Milwaukee,* 746 F.2d 1205, 1238 (7th Cir.1984). *See, also,* Steinglass, "Availability of Section 1983 as Remedy Creates Confusion in State Courts," *The National Law Journal,* June 2, 1986, pp. 20–22; Steinglass, "Circumventing the State Limitations on Sec. 1983 Wrongful-Death Claims," *The National Law Journal,* June 9, 1986, pp. 20, 33, based upon Professor Steinglass' article in 60 Indiana L.J. (1985). However, confronted with standing problems, federal courts have "borrowed" the wrongful death remedy as well as the survival remedy from state statutes under the vehicle of 42 U.S.C. § 1988, declining to apply state limitations on recovery if necessary to fairly compensate victims of constitutional deprivations and to deter police misconduct. *See, Brazier v. Cherry,* 293 F.2d 401 (5th Cir.1961); *Bell, supra; McFadden v. Sanchez,* 710 F.2d 907 (2d Cir.1983); *Guyton v. Phillips,* 532 F.Supp. 1154 (N.D.Cal.1981); *Sager v. City of Woodland Park,* 543 F.Supp. 282 (D.Colo.1982); *Heath v. City of Hialeah,* 560 F.Supp. 840 (S.D.Ga.1983).

Under § 1988, "Proceedings in Vindication of Civil Rights," where federal laws "are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies,"

... the common law, as modified and changed by the constitution and statutes of the State wherein the court having

jurisdiction of said civil or criminal case is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the clause....

In *Brazier, supra,* a § 1983 lawsuit by a surviving widow against Georgia police officers for the death of her husband as an alleged result of civil rights deprivations, the court borrowed the state survival and wrongful death statutes to compensate for "deficiencies" in the federal law, *i.e.* "a gap for death in the substantive policy making no distinction between violent injuries and violent death."

> [I]t defies history to conclude that Congress purposely meant to assure the living freedom from ... unconstitutional deprivations, but that, with like precision, it meant to withdraw the civil rights statutes against the peril of death.

> .    .    .    .    .

> [W]here then do we find the statutory machinery to give effective redress after death?.... [W]e are of the clear view that Congress adopted as federal law the currently effective state law on the general right of survival. This was done by § 1988.

> .    .    .    .    .

> Since Georgia now provides both for survival of the claim which the decedent had for damages sustained during his lifetime as well as a right of recovery to his surviving widow and others for homicide ... we need not differentiate between the two types of actions. To make the policy of the Civil Rights Statutes fully effectual, regard has to be taken of both classes of victims. Section 1988 declares that this need may be fulfilled if state law is available. Georgia has supplied the law.

293 F.2d at 404–405, 408.

*Bell, supra,* perhaps the leading § 1983 wrongful death case, set out a three-step test under § 1988 "for the selection of the appropriate substantive law in civil rights cases."

First, the court must decide whether the civil rights acts are "deficient" in furnishing a particular rule. If this inquiry is answered affirmatively, state law is examined to fill the interstices in the federal provisions. Often there is no state law directly on point, so that only the provisions most closely analogous to federal civil rights law can be considered. Finally, the state law must be disregarded in favor of federal law if the state law is inconsistent with the meaning and purpose of federal and constitutional law. In resolving questions of inconsistency between federal and state law raised under Section 1988, federal statutes and constitutional provisions must of course be considered, but also "the policies expressed in [them]." Of fundamental importance is whether the application of state law "would be inconsistent with the federal policy underlying the cause of action."

746 F.2d at 1234 (citations omitted).

In *Bell,* a § 1983 action against Milwaukee police brought by a black shooting victim's siblings, the estate of the victim and the estate of the victim's father, the Seventh Circuit in a lengthy opinion stated that since the civil rights acts do not specify the survivability of § 1983 actions, identify the "injured parties" when the victim is killed, or define the measure of damages, "there must be a reference to state law unless inconsistent with federal law." *Id.* The court then proceeded to "borrow" Wisconsin's wrongful death and survival causes of action but disregarded, as inconsistent with constitutional and § 1983 policy, the limitations imposed by the state statutes, *i.e.* the wrongful death statute's preclusion of recovery by the victim's estate for loss of life itself, *id.* at 1235–1241, and the statute's $25,000 limit on damages for loss of society and companionship, *id.* at 1250–1253.

The Seventh Circuit noted that the United States Supreme Court had acted similarly in *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), where it had permitted a *Bivens* action by a mother

on behalf of her deceased son, despite the fact that the state's survival statute would extinguish any claim. *Id.* at 1237–1238. Two justices had acknowledged in their concurrences that they would reach the same result in a case under § 1983; otherwise, differing rules concerning the liability of federal and state officials for similar constitutional wrongs would create an "unseemly" result. 446 U.S. at 29–30, 100 S.Ct. at 1477.

The *Bell* court also noted that although the Supreme Court dismissed certiorari in *Jones v. Hildebrandt,* 432 U.S. 183, 97 S.Ct. 2283, 53 L.Ed.2d 209 (1977), and thus did not decide the issue, "both the majority and the dissent questioned the applicability of state damages restrictions on a beneficiary's Section 1983 action where the deprivation of a liberty right caused death." 746 F.2d at 1252.

The Supreme Court in *Carey v. Piphus,* 435 U.S. 247, 255, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978), observed that damages were available under § 1983 for acts "found ... to have been violative of ... constitutional rights and to have caused compensable injury...." As the Seventh Circuit stated in *Bell,*

> [a]lthough the Court in *Carey* did not expressly equate compensation for unconstitutional deprivations with full compensation, where the evidence establishing the unconstitutional harm is compelling, such an inference is appropriate in light of Carey's persuasive analysis of the language respecting damages and the legislative history behind Section 1983.

746 F.2d at 1252.

The District Court for the Northern District of California, through Judge Patel, also cited *Carey* for "the need to make an independent assessment of the measure of damages in § 1983 actions." *Guyton v. Phillips,* 532 F.Supp. 1154, 1167 (N.D.Cal. 1981). The *Guyton* court, noting that it had found "no cases where a cause of action for deprivation of civil rights did not survive when the actions giving rise to the claim were also the cause or a contributing

factor to the death of the decedent," would have preferred to have bypassed state law altogether in recognizing survival actions under § 1983, but reluctantly followed the trend in "borrowing" the state cause of action for survival and disregarding a preclusion of damages for pain and suffering.

This court considers the better view to be that claims arising under § 1983 survive as a principle of federal common law without regard to state law. That view takes into consideration the need for a uniform policy of survival and damages. It recognizes the remedial purposes of the Act. It also eliminates the need to refer to, analyze, and rationalize state statutes that were not enacted in contemplation of the Act or its intent.

. . . . .

However, taking heed of the guidance offered by the majority in *Robertson* [*supra*], this court follows what appears to be the present interpretation of § 1988. Therefore, we look to the state statute, and if an inconsistency with federal law is found, we look to the federal common law. [The restrictions found in California's survival statute] ... are significantly inhospitable to the policies fostered by the [Civil Rights] Act.

532 F.Supp. at 1166.

Applying the test of § 1988 as elaborated in *Robertson v. Wegmann,* 436 U.S. 584, 589–590, 98 S.Ct. 1991, 1994–1995, 56 L.Ed.2d 554 (1980), and *Bell, supra,* to the case at bar, it is clear that § 1983 is silent on the issues of survivability of a decedent's constitutional claims, recovery for wrongful death and the appropriate measure of damages. Thus the court will look to Washington's wrongful death and survival statutes. Defendants, however, urge that recovery for wrongful death is not available to plaintiffs because the statutes require an allegation of parental dependency on the deceased. *See,* R.C.W. 4.20.020, R.C.W. 4.20.060, R.C.W. 4.24.010. Furthermore, defendants argue that the exclusion of damages for pain and suffering in R.C.W. 4.20.046 should apply in this case,

1256

limiting any recovery under the survival statutes.

The task before the court is then to determine whether these limitations are inconsistent with federal statutes and the constitution, and the policies expressed in them. The fundamental policies behind § 1983 "include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." 436 U.S. at 590–591, 98 S.Ct. at 1995. This court agrees with the approach taken by the District Court for the Northern District of California that the exclusion on recovery for pain and suffering in the state's survival statute is inconsistent with the purposes of § 1983.

> Had the victim survived, he could have recovered, among other things, ... pain and suffering. The inescapable conclusion is that there may be substantial deterrent effect to conduct that results in the injury of an individual but virtually no deterrent to conduct that kills the victim.

*Guyton v. Phillips*, 532 F.Supp. 1154, 1166 (N.D.Cal.1981).

Defendants have also argued that plaintiffs have no cause of action under the state's wrongful death statutes because those statutes create a new cause of action and, furthermore, plaintiffs have not alleged dependency on decedent, their son. The fact that R.C.W. 4.20.010–.020 and 4.24.010 create new and original causes of action is not preclusive of their invocation in this lawsuit, as has been shown, *supra*, from the practice of many courts in "borrowing" the wrongful death cause of action from state law. A more difficult question is whether this court should find that the application of the dependency requirement is inconsistent with federal policy underlying § 1983, such that the requirement may be disregarded.

Under Washington's wrongful death statutes, parents have no cause of action for the wrongful death of a child over 21 years old unless they are dependent upon the child for support. "The requirement of beneficiary status is express; the condition precedent to status is dependency." *Warner v. McCaughan*, 77 Wash.2d 178, 185, 460 P.2d 272 (1969).

In considering whether this requirement should be applied in a § 1983 action, the court "may not ... mold the constitutional claim to fit within the parameters of state law." *Bass By Lewis v. Wallenstein*, 769 F.2d 1173, 1188 (7th Cir.1985). On the other hand, adoption of the state limitation will result in abatement of the action in a situation which is distinct from *Robertson, supra;* in the case *sub judice*, the alleged deprivation of constitutional rights caused the death of plaintiff's decedent.

In a somewhat analogous case, *Sager v. City of Woodland Park*, 543 F.Supp. 282 (D.Colo.1982), the District Court for Colorado dismissed the § 1983 claims of a decedent's sister, noting that the state's wrongful death statute did not provide for a cause of action by a deceased minor's sister. The court found that the standing provisions of the Colorado statutes were not inconsistent with the purposes and policies underlying § 1983 because the decedent's parents still could assert the state claims; however, the court "might be persuaded to reach a different result if the decedent died unsurvived by parents." *Id.* at 291, n. 10. The court proceeded to reject the notion that the state wrongful death act's limitations on non-pecuniary losses by the parents should apply in a § 1983 action.

> Recognition of the proper function of § 1983, the differences in the policies underlying state law rights and constitutional rights and the particular need to apply these considerations to the more egregious constitutional violations requires application of the generally available § 1983 damage categories in the instant case. Alternatively, the state law damage restrictions must be disregarded because their application would be inconsistent with the purposes and policies underlying § 1983 and therefore, "inconsistent with federal law" pursuant to § 1988.... Since the allegedly unconstitutional conduct caused the decedent's

death, application of Colorado survival and wrongful death damage rules would undermine the deterrence goals of § 1983.

*Id.* at 296–297.

In *Bell, supra*, the Seventh Circuit respected the Wisconsin wrongful death statute's exclusion of recovery for the loss of society and companionship among siblings, finding that if the federal Constitution permitted siblings to recover "there could be no principled way of limiting such a holding to the immediate family or perhaps even to blood relationships." 746 F.2d at 1247. However, the court also stated that its holding was influenced in part "by our recognition of the federal right to Section 1983 recovery on behalf of the victim's estate and the victim's parents," and that it was uncertain whether allowing recovery by the siblings would result in enhanced deterrence of unlawful police conduct. *Id.*

In the case at bar, Washington's wrongful death statutes provide that an action shall be for the benefit of a spouse or child of a decedent, but if there is no spouse or child—as in the case at bar—the action may be maintained for the benefit of dependent parents. R.C.W. 4.20.020. The action must be brought by a personal representative on behalf of these statutory beneficiaries, R.C.W. 4.20.010, which has been done. While recognizing that the statutes' dependency requirement "serves a double purpose in that its satisfaction establishes the necessary proof on the damage issue," Comment, *Damages in Washington Wrongful Death Actions*, 35 Wash. L.Rev. 441, 449 (1960), the underlying purposes of the state statute do not necessarily control and correspond to the purposes of § 1983. "Regardless of the law applied in a particular case, it is clear that the ultimate rule adopted under § 1983 be a federal rule responsive to the need which arises whenever a federal right is im-

paired." 436 U.S. at 588, 98 S.Ct. at 1994. The independent vitality of § 1983 has been reaffirmed many times by the Supreme Court. *See, Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

These considerations lead the court to hold that the wrongful death action brought on behalf of decedent's parents is not barred by the failure of plaintiffs to allege dependency, and that the limitations imposed by the statute are inconsistent with the purposes of § 1983. The goals of deterrence, compensation and federal supremacy require that defendants' motion to dismiss, and for summary judgment, on the basis of lack of standing under the state wrongful death statute be denied.[1]

■ Finally, the court must address defendants' claim that it should defer to the prior state court action in Kittitas County. The Ninth Circuit has cited *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), to the effect that the federal courts have an "unflagging obligation" to exercise the jurisdiction given them, in the absence of exceptional circumstances. *Tovar v. Billmeyer*, 609 F.2d 1291 (9th Cir.1980). This obligation is "particularly weighty when those seeking a hearing in federal court are asserting ... their right to relief under 42 U.S.C. § 1983." *Id.* at 1293. "Under such circumstances conflicting results, piecemeal litigation, and some duplication of judicial effort is the unavoidable price of preserving access to the federal relief which section 1983 assures." *Id.*

Considering the factors set our *infra*, at p. 1251, the court is satisfied that it should not abstain in this case. While the Kittitas County action was filed prior to the federal action, counsel stated in oral argument that an Agreed Order dismissed the § 1983 claims in the state court action. Congress

---

1. Plaintiffs claim that, as Mr. Davis' parents, they had a liberty interest in the companionship, care, custody and management of their child and thus they have "a parental cause of action in their own right, individually." Defendants, in response, argue that there is no such constitutionally-protected interest. However, as the court has determined that the limitations in the state statutes are inapplicable in this case, it is not necessary to reach the constitutional issue.

**1258**

clearly intended that where constitutional deprivations of the type alleged herein any asserted, plaintiffs should be able to avail themselves of a federal forum. Additionally, there appears to have been far less progress in the state case than in the federal lawsuit.

## PLAINTIFFS' MOTION TO REQUIRE PRODUCTION OF RECORDS AND MOTION TO STAY CONSIDERATION OF SUMMARY JUDGMENT MOTION

On November 25, 1986, the court held an expedited hearing on defendants' Motion to Quash Subpoena and Subpoena Duces Tecum, and entered an Order requiring, among other things, that plaintiffs' counsel or representative be allowed to inspect the "daily logs covering the requested dates" at the Ellensburg Police Station, as well as "any incident reports as identified by plaintiffs' counsel" (Ct.Rec. 50).

Plaintiffs' counsel have now identified a "crime classification journal" or log which they claim is necessary to their discovery (Ct.Rec. 58). Defense counsel stated that they are willing to provide this information but cannot do so under the state's Criminal Records Privacy Act, R.C.W. 10.97, without a court order. Defendants have not properly filed and noted a motion for a protective order.

The court believes the intent of its prior Order is clear. Defendants are to provide plaintiffs with any requested police department records which could possibly disclose any other incidents in which these defendant policemen were involved. Counsel shall confer and forthwith submit to the court a proposed Agreed Order covering the discovery now at issue.

Plaintiffs also sought to defer consideration of the *Monell* portion of defendants' summary judgment motion pending the receipt of the above-referenced discovery (Ct. Rec. 64). The court has determined that this is appropriate, and it therefore reserves its decision on the *Monell* liability of the City of Ellensburg, *see, supra,* pp. 1252–1253, pending discovery and supplemental briefing by counsel. Once plaintiffs have received the requested discovery, they shall file a supplemental memorandum resisting defendants' motion and shall contact the court for a new hearing date. Defendants shall be entitled to reply to the memorandum as per Local Rule 11.

## PLAINTIFFS' MOTION FOR MEDICAL EXAMINATION OF DEFENDANTS NEWBRY AND HUTTON

Plaintiffs moved under Rule 35(a), Fed.R. Civ.P., for an Order requiring policemen Newbry and Hutton to submit to a mental examination "for the purpose of determining the mental condition of said defendants as it effected [sic] their actions and responses to plaintiffs' decedent Ronald Davis on June 10, 1984 (Ct.Rec. 40). A mental examination is also necessary, according to plaintiffs, "to examine the knowledge of defendant City of Ellensburg regarding the officers' ability to function as police officers."

Defendants respond that good cause has not been shown to warrant the examinations and there are no allegations in the pleadings which place the mental conditions of the officers in controversy. *Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964).

> The only controversy regarding the individual defendants is whether they made "unprivileged, unconsented, unlawful and unjustified contract" with the decedent. Regarding the City of Ellensburg, the only matter in controversy is the extent of the City of Ellensburg's knowledge regarding the officers' mental conditions,

and a mental examination would have no probative value as to the city's knowledge (Ct.Rec. 69).

■ It appearing that the central issue is the city's knowledge, the court has determined that counsel should have the benefit of deposing Police Chief Loveless. Plaintiffs shall renew their motion, if desired, after that deposition, but in accordance

with the motion cutoff date in the court's Status Conference Order (Ct.Rec. 22).

ACCORDINGLY, IT IS ORDERED:

1. Defendants' Motion to Dismiss or in the Alternative to Stay the Proceedings (Ct.Rec. 25) is DENIED, except that the portion of the motion addressing the liability of the City of Ellensburg under *Monell, supra,* is RESERVED as stated above.

2. Defendants' Motion for Summary Judgment (Ct.Rec. 29) is DENIED, except that the portion addressing the liability of the City of Ellensburg under *Monell, supra,* is RESERVED as stated above.

3. Plaintiffs' Motion to Require Production of Records for Inspection and Copying (Ct.Rec. 58) is GRANTED as stated above; counsel shall forthwith prepare and submit to the court a proposed Agreed Order regarding the subject discovery.

4. Plaintiffs' Motion to Stay Consideration of Summary Judgment (Ct.Rec. 64) is GRANTED only as to the *Monell* portion of defendants' motion.

5. Plaintiffs' Motion for Medical Examination of Defendants Joseph K. Newbry and William J. Hutton (Ct.Rec. 40) is DENIED WITH LEAVE TO RENEW.

IT IS SO ORDERED.