[No. 45365-3-I. Division One. August 6, 2001.]

CHARLES SCHUMACHER, *as Personal Representative, Appellant*, v. JOHN WILLIAMS, ET AL., *Respondents*.

*Philip J. Buri* and *Rand Jack* (of *Brett & Daugert, P.L.L.C.*), for appellant.

*Thomas J. Collins* and *Amy E. Wood* (of *Merrick, Hofstedt & Lindsey, P.S.*); and *Christine O. Gregoire, Attorney General*, and *Douglas H. Brown* and *Carrie L. Bashaw, Assistants*, for respondents.

*Deborah A. Dorfman* on behalf of Washington Protection & Advocacy Systems, amicus curiae.

GROSSE, J. — Charles Schumacher (Schumacher) is the brother of Maria Schumacher (Maria), a disabled resident of an adult boarding home who died as a result of hot-water burns suffered at the hands of another resident. Schumacher was not dependent on Maria for support and therefore is not a statutory beneficiary under the general provisions of our state's wrongful death or survival of action statutes. The survival of the new cause of action created by

the Legislature in the abuse of vulnerable adults statute is similarly restricted in its reach. It does not survive for the benefit of siblings who are not dependent on the deceased for support. The provisions of the federal Rehabilitation Act of 1973 do not provide otherwise. Rather, the federal law looks to the state law with respect to survival of actions. The decision of the trial court dismissing Schumacher's action is affirmed.

## FACTS

The Homestead was an adult boarding home located in Bellingham, Washington. It was privately owned and operated by John and Delores Williams. The facility was licensed by the Washington State Department of Health to operate as a boarding home. Maria, who had Downs Syndrome, was a resident of The Homestead from September 1982 through May 31, 1997, the date of the incident leading to her death.

On May 31, 1997, Maria sustained a severe hot-water burn injury while taking a bath with the assistance of another resident. The facility failed to have staff members supervising the residents at the time of the incident. Maria died eight days later as a result of the burns.

As a result of the injuries to and the death of Maria, Schumacher filed an action as personal representative of Maria's estate, and individually, seeking recovery against the Williams, The Homestead, and the State. He based his claims upon the abuse of vulnerable adults statute, chapter 74.34 RCW; the Civil Rights Act, 42 U.S.C. § 1983 (1994); the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12132 (1995); and the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 794 (1999). Schumacher originally sought to collect damages for himself individually, but abandoned his personal claims. Moreover, he does not dispute that he was not dependent on Maria, and that the estate did not have economic losses.

The Williams, The Homestead, and the State filed mo-

tions for summary judgment seeking dismissal of the claims. Summary judgment was granted against the estate on all claims. The trial court held that the estate had no recognized statutory beneficiaries under Washington's wrongful death and survival of action statutes, which precluded recovery for the estate and Schumacher individually.

Schumacher, as personal representative of his sister's estate, appeals the dismissal of the claims under the abuse of vulnerable adults statute, RCW 74.34.210, and § 504 of the Rehabilitation Act.[1]

## DISCUSSION

 At common law, no cause of action survived the death of an individual, nor was there a right of recovery for wrongful death.[2] The Legislature passed statutes in Washington governing wrongful death and survival actions in certain circumstances.[3] Wrongful death actions in Washington are strictly statutory. Liberal construction of wrongful death statutes is appropriate only after the proper beneficiaries have been determined.[4]

 RCW 4.20.010[5] creates a right of action by the personal representative when a person's death is caused by

---

[1] The usual standard of review applies. In reviewing a grant of summary judgment, this court engages in the same inquiry as the trial court. Summary judgment is appropriate if the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. CR 56(c). The facts and all reasonable inferences are considered in the light most favorable to the nonmoving party. This court reviews questions of law de novo. *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 197-98, 943 P.2d 286 (1997).

[2] *Cooper v. Runnels*, 48 Wn.2d 108, 291 P.2d 657 (1955).

[3] There are two wrongful death statutes, RCW 4.20.010 and .020; a parent's action for the wrongful death of a child, RCW 4.24.010; and two survival statutes, RCW 4.20.046 and .060.

[4] *Roe v. Ludtke Trucking, Inc.*, 46 Wn. App. 816, 819, 732 P.2d 1021 (1987).

[5] RCW 4.20.010 provides:

When the death of a person is caused by the wrongful act, neglect or default of another his personal representative may maintain an action for damages

a wrongful act, neglect, or default of another. However, only certain persons may maintain the wrongful death action. RCW 4.20.020 provides in pertinent part:

> Every such action shall be for the benefit of the wife, husband, child or children, including stepchildren, of the person whose death shall have been so caused. *If there be no wife or husband or such child or children, such action may be maintained for the benefit of the parents, sisters or brothers, who may be dependent upon the deceased person for support, and who are resident within the United States at the time of his death.*

(Emphasis added.) The statute establishes two tiers of beneficiaries on whose behalf a wrongful death or survival action may be maintained. The first tier of beneficiaries includes the spouse and the children of the deceased. It is not necessary for these beneficiaries to establish financial dependence on the deceased. The second tier of beneficiaries, including parents and siblings of the deceased, may recover only if there are no first tier beneficiaries and only if the designated beneficiaries were dependent on the deceased for support.[6]

Schumacher correctly asserts that when the Legislature adopted the abuse of vulnerable adults statute, chapter 74.34 RCW, it created a new cause of action to protect disabled adults from abandonment, abuse, financial exploitation, or neglect.[7] He is also correct that the Legislature added an additional provision to preserve any claim after the death of a vulnerable adult. That section, RCW 74.34.210, is at the heart of the appeal and provides:

> A petition for an order for protection or an action for damages under this chapter may be brought by the plaintiff, or where necessary, by his or her family members and/or guardian or legal fiduciary, or as otherwise provided under this chapter.

against the person causing the death; and although the death shall have been caused under such circumstances as amount, in law, to a felony.

[6] *Tait v. Wahl*, 97 Wn. App. 765, 769, 987 P.2d 127 (1999), *review denied*, 140 Wn.2d 1015 (2000).

[7] RCW 74.34.200.

The death of the plaintiff shall not deprive the court of jurisdiction over a petition or claim brought under this chapter. Upon petition, after the death of the vulnerable person, the right to initiate or maintain the action shall be transferred to the executor or administrator of the deceased, for the benefit of the surviving spouse, child or children, or other heirs set forth in chapter 4.20 RCW.

Schumacher claims the statute merely sets forth a list of those individuals who may maintain an action on behalf of the vulnerable adult or his or her estate and argues that because the dependency requirement of RCW 4.20.020 is not contained in the vulnerable adults section it does not apply. Schumacher maintains the Legislature formulated new policy allowing vulnerable disabled adults without statutory beneficiaries to recover noneconomic damages; that a parent or sibling does not have to be dependent on the deceased in order to maintain the action. We disagree.

 Our principal objective in interpreting a statute is to effectuate the intent of the Legislature.[8] To do so we first look to the language of the statute. If it is clear and unambiguous we go no further.[9] Here, unfortunately, the specific provision at issue is rendered ambiguous by its reference to another statute. The interpretation advanced by Schumacher is reasonable. The interpretation urged by the respondents that the reference to chapter 4.20 RCW incorporates the dependency requirement for siblings is likewise reasonable. "When statutory language is susceptible to more than one reasonable interpretation, it is considered ambiguous."[10] In this circumstance we look to legislative history and the rules of statutory construction to ascertain legislative intent.

It is clear from the history of the statute that the

---

[8] *State v. Sullivan*, 143 Wn.2d 162, 174-75, 19 P.3d 1012 (2001); *State v. Riles*, 135 Wn.2d 326, 340, 957 P.2d 655 (1998).

[9] *Sullivan*, 143 Wn.2d at 175.

[10] *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001) (citing *Harmon v. Dep't of Soc. & Health Servs.*, 134 Wn.2d 523, 530, 951 P.2d 770 (1998)).

Legislature had in mind the significant impact of the abuse of vulnerable adults, and chose to create a new cause of action as one of the means to address the issue. The House Bill Report states the following in part as a summary:

> Frail elders and vulnerable persons who are abused, neglected, exploited or abandoned (as defined), while residing in certain licensed care facilities or receiving other licensed care, have a cause of action for damages, including injuries, pain and suffering and loss of property. If they prevail in the legal action, they are awarded actual damages (money), costs of the suit (including fees for guardians ad litem and expert witnesses), and reasonable attorney's fees.[11]

What is not clear is the Legislature's intent with regard to the survival of those actions. In both the House of Representatives and the Senate, the bill reports simply recite the same ambiguity: "The right of action can survive the plaintiff, for the benefit of the surviving spouse, children, or heirs."[12]

The testimony of one of the prime sponsors of the bill, Senator Darlene Fairley, is more illuminating. In explaining the bill to a committee of the House of Representatives the Senator relates the tale of two women who suffered sexual abuse by another resident while in an extended care facility. One woman was survived by a daughter and one woman was survived by her husband. The Senator stated:

> Now, in the current law, if something happens in an adult family care, any long-term care facility, that is a wrongful death—if, for instance, you have a mother in a facility and something—they, by abuse or neglect, in effect kill your mother and you get a judgment that says, yes, this is a wrongful death and, by gosh, they did kill your mother, in essence, what you have is a piece of paper that says that and a dead mom. And I feel this legislation will address that.[13]

---

[11] H.B. REP. SSB 5889 (Wash. 1995).

[12] H.B. REP. SSB 5889; S.B. REP. SSB 5889 (Wash. 1995).

[13] Tr. of Audiotape Recording of H.R. Public Hr'g on RCW 74.34 et seq., at 6 (Mar. 24, 1995).

What we can glean from this is that the Legislature clearly intended to expand the protections for vulnerable adults and believed that it was creating a new cause of action. It is also clear that the Legislature intended this new cause of action to survive, but to whom and on what conditions remained unclear.

One rule of statutory construction that might apply is that we should seek to effectuate the policy of the act.[14] Extending a right to continue an action to a nondependent sibling may well effectuate the policy of the vulnerable adults statute. However, to do so would create a conflict with the provisions of the general statute on survival of actions, RCW 4.20.046. In such a circumstance, our paramount obligation is to attempt to harmonize statutes pertaining to the same subject matter.[15] Other rules of statutory construction weight the same side of the scale.

Generally, rules of statutory construction indicate that where a later enacted statute on the same subject is the more specific, it will control the earlier and more general statute.[16] However, this rule also gives way to the duty to harmonize if possible.[17] Further, we will not assume that the Legislature intended to effect a significant change in the law by implication,[18] and the interpretation of the statute advanced by Schumacher would indeed effect a significant change in the law.

A review of the history of the wrongful death and survival of action statutes reflects a consistent conservatism on the part of the Legislature with regard to the

---

[14] *City of Seattle v. Fontanilla*, 128 Wn.2d 492, 498, 909 P.2d 1294 (1996).

[15] Related statutes must be construed harmoniously to bring about a unified statutory scheme that maintains the integrity of the respective statutes. *State v. Chapman*, 140 Wn.2d 436, 448, 998 P.2d 282, *cert. denied*, 531 U.S. 984 (2000).

[16] *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 630, 869 P.2d 1034 (1994).

[17] *Waste Mgmt. of Seattle*, 123 Wn.2d at 630 (citing *State v. Wright*, 84 Wn.2d 645, 650, 529 P.2d 453 (1974) and *Cossel v. Skagit County*, 119 Wn.2d 434, 437, 834 P.2d 609 (1992)).

[18] *State v. Strauss*, 119 Wn.2d 401, 418, 832 P.2d 78 (1992) (citing *State v. Calderon*, 102 Wn.2d 348, 351, 684 P.2d 1293 (1984)).

beneficiaries of those statutes. Despite changes over the years broadening the basic concept of restricting survival of actions to economic damages, first excluding any damages for pain and suffering, but then in 1993 electing to include them by amending RCW 4.20.046,[19] the beneficiaries under both the survival of action provisions and the wrongful death statute have not included siblings or parents who are not dependent on the decedent for support.[20]

To interpret the phrase "or other heirs set forth in chapter 4.20 RCW" to *not* include the dependency requirement for those "other heirs" would work a significant change in the law, would essentially amend chapter 4.20 RCW by implication, and would require an interpretation of the abuse of vulnerable adult statute that is inconsistent with chapter 4.20 RCW. Moreover, such an interpretation is not necessary to carry out the manifest object of the vulnerable adults statute. Without the disharmonious construction for which Schumacher argues, the vulnerable adults statute still accomplishes what it set out to do, create a new cause of action for abandonment, abuse, or neglect of vulnerable adults. Survival of the action to the benefit of siblings who are not dependent on the decedent is not necessary to the legislative purpose.

Schumacher also claims the trial court erred in dismissing his claim under § 504 of the Rehabilitation Act.[21] He claims the Rehabilitation Act creates a private right of action for Maria's estate to sue the Williams, The Homestead, and the State of Washington for discrimination. Schumacher asserts that the trial court's determination that he was not a statutory beneficiary for purposes of

---

[19] *See* LAWS OF 1993, ch. 44, § 1.

[20] *Tait*, 97 Wn. App. at 769 (citing *Masunaga v. Gapasin*, 57 Wn. App. 624, 630, 790 P.2d 171 (1990)). *See also Roe*, 46 Wn. App. at 819 (scope of statute protects only beneficiaries clearly contemplated by the statute).

[21] Section 504 of the Rehabilitation Act, as amended, provides in pertinent part:

No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]

recovery under the Rehabilitation Act is preempted by application of federal law, and that the Rehabilitation Act preempts state law limitations on who may recover. We disagree.

In 1990, Congress extended § 504's prohibitions to private employers under the ADA, 42 U.S.C. §§ 12101-12213. And in 1992, Congress amended § 504 to expressly incorporate the liability standards of the ADA.[22] Thus, the substantive standards for determining liability are the same under either the ADA or the Rehabilitation Act.[23] Although no court has addressed the precise issue of the survival of claims under § 504, courts have determined survivability questions both for ADA and for § 1983 claims. Those cases hold that the question of the survival of actions by the decedent and his or her estate necessarily follows the applicable and appropriate state law.[24] Therefore, contrary to Schumacher's assertions, in Washington a claim under the Rehabilitation Act cannot be sustained because the federal law follows the applicable state law when determining whether the claim survives.[25]

Schumacher contends the case of *Davis v. City of Ellensburg*, 651 F. Supp. 1248 (E.D. Wash. 1987), supports his argument that Washington state law is inconsistent

---

[22] 29 U.S.C. § 794(d).

[23] The ADA is expressly modeled after the Rehabilitation Act and courts have interpreted the ADA and the Rehabilitation Act in the same manner. *See Myers v. Hose*, 50 F.3d 278, 281 (4th Cir. 1995). Therefore, it follows that Schumacher would not have standing under the Rehabilitation Act. The Rehabilitation Act, like the ADA and § 1983, is silent on the issue of survivability of a decedent's claims and recovery for wrongful death. As with the ADA and § 1983 claims, state law applies. *See Robertson v. Wegmann*, 436 U.S. 584, 98 S. Ct. 1991, 56 L. Ed. 2d 554 (1978) (state survivorship statute applies where not inconsistent with constitutional or federal law).

[24] *See Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895 (7th Cir. 1997) (ADA and § 1983 claims survive only under appropriate state law); *Smith v. City of Fontana*, 818 F.2d 1411 (9th Cir. 1987) (state law determines survivability of § 1983 claims), *overruled on other grounds by Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1040 n.1 (1999). *See also Tyndall v. Nat'l Educ. Ctrs, Inc.*, 31 F.3d 209, 213 n.1 (4th Cir. 1994) (an ADA case relying on Rehabilitation Act case law).

[25] *See generally Bell v. City of Milwaukee*, 746 F.2d 1205, 1248, 1250 (7th Cir. 1984).

with the federal law and also supports his argument that his § 504 claim should remain viable. In *Davis,* parents brought a wrongful death action for the violation of their son's civil rights that resulted in his death. The court recognized: "Under Washington's wrongful death statutes, parents had no cause of action for the wrongful death of a child over 21 years old unless they are dependent upon the child for support."[26] The court found that the Washington requirement was preempted because it was inconsistent with the purpose of the federal law to provide vindication for violations of civil rights. However, the *Davis* case is distinguishable from the instant case on at least two grounds.

First, the *Davis* opinion was decided prior to the 1993 amendments to Washington's general survival of action section, RCW 4.20.046(1). Those amendments now permit recovery for noneconomic damages without a dependency test in cases where a spouse or children survive.

Second, the determination in *Davis* hinged on the fact that the claims were based on constitutional violations. It is well established that state law does not work to preempt federal civil rights actions which assert substantive due process violations. However, unlike the allegations in *Davis,* Schumacher has not alleged any substantive due process violations or other constitutional claims.

Even if we were to determine that a Rehabilitation Act claim was not precluded by Washington's wrongful death and survival statutes, the record shows that Schumacher failed to establish that Maria was denied any benefit solely by reason of her disability,[27] or that her death was the result of intentional discrimination on the part of the Williams or the State, both prerequisites to recovery.[28]

The trial court properly determined that Schumacher

---

[26] *Davis,* 651 F. Supp. at 1256.

[27] *Flight v. Gloeckler,* 68 F.3d 61 (2d Cir. 1995).

[28] *See Ferguson v. City of Phoenix,* 157 F.3d 668, 674 (9th Cir. 1998) (absent showing of discriminatory intent, compensatory damages are not available under the ADA or Rehabilitation Act).

was not a statutory beneficiary under Washington's wrongful death and survival statutes, precluding recovery under both the abuse of vulnerable adults statute and the Rehabilitation Act. The judgment of the trial court is affirmed.

KENNEDY, J., concurs.

ELLINGTON, J. (concurring) — Once again[29] we confront the flaws in the statutory scheme for survival of actions. Maria Schumacher is exactly the person the legislature set out to protect in enacting the vulnerable adults statute. But the statute did not protect her, because of the limitations of the survival statute.

Had Maria Schumacher survived her scalding bath, she would have had a cause of action under the statute. But when abuse or neglect results in death, instead of just injury, the wrong goes without remedy unless the deceased is survived by a spouse, a child, or *dependent* parents or siblings.

Certainly there are many vulnerable adults with spouses or children. Probably some few even have wealth, so that dependent heirs, parents or siblings, may exist. Maria Schumacher, as it happened, had neither wealth, nor spouse or children. So, her family is left without recourse, and those whose negligence allegedly led to her death are left unaccountable. In cases of vulnerable adults without statutory heirs, the message to caregivers seems to be that fatal negligence is preferable to mere injury.

I nonetheless concur in the majority opinion, because courts must not, despite strong policy considerations, bend the rules of statutory construction to work an unstated change in the law. The majority correctly refuses to do so. This is a matter the legislature must address, as I hope it does.

Review denied at 145 Wn.2d 1075 (2002).

---

[29] *See Tait v. Wahl*, 97 Wn. App. 765, 775, 987 P.2d 127 (1999) (Ellington, J., concurring), *review denied*, 140 Wn.2d 1015 (2000).