[No. 53386-0-I.   Division One.   April 18, 2005.]

NANCY CUMMINGS, *as Personal Representative, Appellant,* v. GUARDIANSHIP SERVICES OF SEATTLE ET AL., *Respondents.*

744

*Douglas A. Schafer* (of *Schafer Law Firm*), for appellant.

*Clarence C. Jones* (of *Law Offices of Matthew Williams*), for respondents.

¶1 ELLINGTON, J. — Pauline Rae Smith was the subject of a guardianship and had live-in caretakers. She died after falling from the window of her third floor condominium. The questions raised here include whether a claim for economic damages under the abuse of vulnerable adults act[1] survives where there are no statutory heirs; whether actions lie for breach of fiduciary duty and, if so, against whom and for what remedies; whether a guardian acts under color of state law for purposes of the federal Civil Rights Act;[2] and

---

[1] Ch. 74.34 RCW.

[2] 42 U.S.C. § 1983.

whether a claim under the Consumer Protection Act[3] survives to the benefit of the estate.

¶2 Nancy Cummings, in her capacity as personal representative of Pauline Smith's estate,[4] brought this action against Smith's coguardians (Guardianship Services of Seattle and Richard Watkins); the guardians' attorney (Suzanne Howle); and Smith's two live-in caregivers (Gwen Saucedo and Joyce Sambataro). Cummings claims included breach of fiduciary duty, violation of the Consumer Protection Act, violation of the abuse of vulnerable adults act, and violation of Smith's constitutional rights under the federal Civil Rights Act. The trial court dismissed all claims on summary judgment, except for claims against Guardianship Services of Seattle and Sambataro for economic damages to the estate.[5] After settlement discussions stalled, the court ordered enforcement of a settlement on those claims.

¶3 The Estate appeals the orders granting summary judgment, the order enforcing the settlement agreement, and also seeks remand on grounds that no record was made of argument at the summary judgment hearings.

## FACTS

¶4 In June 1999, Pauline Rae Smith was 93 years old and suffered from Alzheimer's disease. She had been a widow for 20 years and had no children or surviving siblings or parents. Under a guardianship established in King County, Guardianship Services of Seattle (GSS) and her long-time attorney, Richard Watkins, acted as coguardians of her person; GSS acted as sole guardian of her estate. Smith was cared for by two live-in caregivers employed by GSS, Gwen Saucedo and Joyce Sambataro. Saucedo worked four days per week; Sambataro worked three.

---

[3] Ch. 19.86 RCW.

[4] We refer to appellant as Cummings or the Estate.

[5] The basis for these damages is discussed *infra*, note 6.

¶5 Smith was prone to waking at night and to wandering. Her caregivers had moved her into the living room where they could sleep at the foot of her bed, which was near a tall window. On the night of her death, the window was left slightly ajar for ventilation. At 4:30 in the morning on June 7, 1999, Sambataro discovered Smith on the ground below the window. Smith died of her injuries later that day.

¶6 In accordance with the terms of her will, Watkins was appointed personal representative of Smith's estate. The following month, in August 1999, GSS and Watkins submitted their final report as guardians. In response to family concerns about possible negligence in the circumstances surrounding Smith's death, the court appointed a guardian ad litem (GAL) to review the report and make recommendations. The GAL recommended that the court approve the financial accounting, but leave the guardianship open and not exonerate the bond. Because potential claims against him gave Watkins a conflict of interest, the GAL recommended that a new personal representative be appointed and be authorized to investigate a potential suit for damages.

¶7 At a hearing in December 1999, the court appointed a successor personal representative, approved Watkins' final report as personal representative, approved his actions and fees, discharged him, and appointed a successor. The court also approved the guardians' report, except as to the circumstances of Smith's death. The court discharged the guardians, terminated the guardianship, and authorized final expenses and payment of fees to GSS and the guardians' attorney, Suzanne Howle. The court expressly preserved any actions against the guardians arising out of Smith's death.

¶8 Nancy Cummings was later appointed as successor personal representative of the estate, and on July 3, 2003, she filed an amended complaint asserting five causes of action: (1) breach of fiduciary duty, against GSS, Watkins, Saucedo and Sambataro; (2) neglect of a vulnerable adult,

against GSS, Saucedo and Sambataro; (3) violation of the Consumer Protection Act (CPA), against GSS; (4) violation of a lawyer's duty to a ward, against Howle; and (5) deprivation of federal civil rights of a ward against Watkins, GSS, Saucedo and Sambataro.

¶9 These claims were dismissed on motions for summary judgment, except for claims against GSS and Sambataro for economic damages under RCW 4.20.046.[6] The court did not directly address the breach of fiduciary duty claims against GSS and Sambataro because of its belief that those claims had been withdrawn.

¶10 In July 2003, the remaining parties engaged in settlement discussions agreed as to the amount of actual damages and agreed to leave open the Estate's right to appeal the summary judgment. The Estate's attorney signed a draft agreement and sent it to Cummings for signature, but Sambataro's attorney circulated a further draft with significant amendments, which Cummings' attorney did not sign. GSS and Sambataro sought an order enforcing the settlement, which the court granted in October 2003.

¶11 The Estate appeals.

## DISCUSSION

¶12 We may affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[7] All facts and reasonable inferences must be considered in the

---

[6] The court appears to have believed that while the substantive claims were dismissed, nonetheless noneconomic damages could be recovered under the general survival statute.

[7] *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

light most favorable to the nonmoving party.[8] We review questions of law de novo.[9]

## Abuse of Vulnerable Adults Act

■■ ¶13 The abuse of vulnerable adults act, chapter 74.34 RCW, was enacted in 1995 to provide protection and legal remedies to vulnerable adults living in the community but dependent on others for their care. The version of the statute in effect at the time of Smith's death was not materially different from the current statute, which states:

> In addition to the other remedies available under the law, a vulnerable adult who has been subjected to abandonment, abuse, financial exploitation, or neglect . . . in the case of a person residing at home who receives care from a home health, hospice, or home care agency, . . . shall have a cause of action for damages on account of his or her injuries, pain and suffering, and loss of property sustained thereby. This action shall be available where the defendant is or was a corporation, trust . . . employee, [or] agent . . . of a . . . home care agency *licensed or required to be licensed under chapter 70.127 RCW.*[10]

Thus the statute applies where the defendant is an organization (or an individual employed by an organization) required to be licensed as an in-home service agency under RCW 70.127.020.[11] The threshold inquiry is whether the activities of the service provider are those that require a license under chapter 70.127 RCW.

¶14 *Licensing Requirement.* The trial court ruled the abuse of vulnerable adults act does not apply to GSS because GSS is not required to be licensed as an in-home

---

[8] *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

[9] *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 813, 854 P.2d 1072 (1993).

[10] RCW 74.34.200(1) (emphasis added).

[11] RCW 74.34.200; RCW 70.127.020(2) (in-home services agency license required for a nursing home, hospital, or other person functioning as a home health, hospice, hospice care center, or home care agency).

service agency. The court observed that the statutes regulating guardianship, chapters 11.88 and 11.92 RCW, do not require guardians to be licensed when providing residential care.

¶15 We disagree with this analysis. The guardianship statutes impose a duty on a court appointed guardian to "care for and maintain" the ward in the setting least restrictive to the incapacitated person.[12] This will often involve arranging for the ward to receive home care services. But the guardianship statutes do not purport to override the licensing requirements for in-home service providers.

¶16 Chapter 70.127 RCW was enacted in 1988 to protect the ill, disabled and elderly who need assistance with personal care.[13] The legislature was concerned about the virtual invisibility of home care providers, and the attendant risks to their vulnerable clients.[14] The legislature addressed this problem by establishing minimum standards for care[15] and by requiring that home care agencies serving these vulnerable populations be licensed to ensure compliance with these standards.

¶17 The legislature thought carefully about exemptions from licensing requirements, and identified 17 such exemp-

---

[12] RCW 11.92.043(4).

[13] LAWS OF 1988, ch. 245, § 1.

[14] RCW 70.127.005 provides:

The legislature finds that the availability of home health, hospice, and home care services has improved the quality of life for Washington's citizens. However, the delivery of these services brings risks because the in-home location of services makes their actual delivery virtually invisible. . . . The fact that these services are delivered to the state's most vulnerable population, the ill or disabled who are frequently also elderly, adds to these risks.

It is the intent of the legislature to protect the citizens of Washington state by licensing home health, hospice, and home care agencies.

[15] RCW 70.127.080 (establishing requirements for on-site surveys, professional and public liability coverage and criminal background checks); RCW 70.127-.120 (establishing standards for recordkeeping, volunteer policies and complaint handling).

tions. Court appointed guardians are not exempt.[16] In many circumstances, guardians will not be subject to the licensing requirements because they do not themselves provide home care. Rather, they arrange for the ward to receive care from home service agencies. GSS, however, is both a professional guardianship entity and a provider of home care services. Cummings contends GSS is required to be licensed. Cummings is correct.

¶18 RCW 70.127.010 requires that a home care agency must be licensed, and sets forth the following definitions:

(5) "Home care agency" means a person administering or providing home care services directly or through a contract arrangement to individuals in places of temporary or permanent residence. . . .

(6) "Home care services" means nonmedical services and assistance provided to ill, disabled, or vulnerable individuals that enable them to remain in their residences. Home care services include . . . [p]ersonal care such as assistance with dressing, feeding and personal hygiene to facilitate self-care; . . . housekeeping, shopping, meal planning and preparation . . . .

. . . .

(15) "Person" means any individual, business, firm, partnership, corporation, company, association, . . . public or private agency or organization . . . that employs or contracts with two or more individuals.

¶19 GSS employs individuals who, like Saucedo and Sambataro, provide home care services to clients.[17]

---

[16] RCW 70.127.040.

[17] After this court's opinion was filed herein, GSS sought reconsideration of our ruling that GSS is subject to licensing as a home health care agency. Contrary to its representations in briefing to this court, GSS now alleges that it does not in fact employ caregivers and did not employ Saucedo or Sambataro. (GSS states its representations resulted from misunderstanding and inadvertence.) GSS contends that but for this error, it could not be subject to the licensing requirement because case managers who provide no direct care are exempt under RCW 70.127.040(14). As Cummings points out in reply, however, the record is replete with references to Saucedo and Sambataro as employees of GSS. Further, the licensing statute applies not only to employers of caregivers, but to those who provide services directly or "through a contract arrangement."

Saucedo and Sambataro lived in Smith's home and provided round-the-clock services, including housekeeping, purchasing groceries, and preparing meals. These activities are home care services. GSS is therefore a home care agency required to be licensed under chapter 70.127 RCW.[18]

¶20 The court erred in dismissing the Estate's claims under the abuse of vulnerable adults act on grounds GSS was not required to be licensed as a home care agency. As employees of a home care agency requiring a license, Sambataro and Saucedo are also subject to liability under the act.[19]

¶21 *Survival of Claims.* The abuse of vulnerable adults act contains its own provision to preserve any claim after the death of a vulnerable adult: "[T]he right to initiate or maintain the action shall be transferred to the executor or administrator of the deceased, *for the benefit of the surviving spouse, child or children, or other heirs set forth in chapter 4.20 RCW.*"[20]

¶22 Relying upon our decision in *Schumacher v. Williams*,[21] Respondents argue that where a death occurs, claims under the abuse of vulnerable adults act survive only if there are statutory beneficiaries listed in chapter 4.20 RCW. In *Schumacher*, however, the claims were for general damages, whereas here the Estate seeks only economic damages.

---

RCW 70.127.010(5). To the extent GSS believes the licensing requirements are unduly burdensome and are needless, given the guardianship statutes, GSS should direct its argument to the legislature.

[18] At oral argument, GSS asserted that the abuse of vulnerable adults act does not apply to nonprofit entities. This argument finds no support in the statute.

[19] Sambataro argues that as an individual she is not subject to regulation and therefore has no liability under the abuse of vulnerable adults act under the terms of RCW 70.127.040. But that statute merely provides that an employee of an already licensed agency need not be separately licensed. The abuse of vulnerable adults act specifically authorizes an action against employees whose employer is required to be licensed. RCW 74.34.200.

[20] RCW 74.34.210 (emphasis added).

[21] 107 Wn. App. 793, 28 P.3d 792 (2001).

■ ¶23 Cummings contends the abuse of vulnerable adults act claim for economic damages survives to the estate. This would be a sensible approach, given the legislative objective. But regardless of the type of damages sought, where a death occurs, the statute plainly limits recovery to the heirs set forth in the general survival statute, chapter 4.20 RCW.[22] These are spouses, children, stepchildren, and dependent parents and siblings.[23] Because Smith's closest surviving relatives are nephews and nieces, she has no statutory heirs. Cummings therefore has no standing under the abuse of vulnerable adults act, and her claims fail.

¶24 This is another unfortunate consequence of linking the abuse of vulnerable adults act in lockstep with the survival statutes. The act is intended to protect frail elders.[24] But those who have no close family members (and therefore no statutory heirs) are those most likely to suffer the harm the statute aims to address. Further, where the negligence of a home care agency results in death, there seems no logical reason to deny recovery of economic damages, such as medical bills.[25] Certainly economic damages would be recoverable were the general survival statute controlling.[26] The effect of the provision, therefore, is that those without statutory heirs may be neglected with impunity so long as the result is death. Once again, we hope the legislature will resolve this discord.[27] Under the present statute, however, dismissal of these claims was required.

---

[22] RCW 74.34.210.

[23] RCW 4.20.020.

[24] *Schumacher*, 107 Wn. App. at 800 (quoting H.B. REP. SSB 5889, 54th Leg., 1st Spec. Sess. (Wash. 1995)).

[25] In 2003, Washington State Adult Protective Services investigated over 6,000 reports of abuse against vulnerable persons over age 60 living in the community. *Available at* http://www.aasa.dshs.wa.gov/topics/abuse/documents/200320APS20statistics.doc (last visited Feb. 25, 2005).

[26] RCW 4.20.046.

[27] *See Schumacher*, 107 Wn. App. at 805 (Ellington J., concurring); *Tait v. Wahl*, 97 Wn. App. 765, 775, 987 P.2d 127 (1999) (Ellington J., concurring).

## Breach of Fiduciary Duty

¶25 The Estate alleges breach of fiduciary duty on the part of GSS, Watkins, the guardians' attorney Howle, and caregivers Saucedo and Sambataro, and seeks the economic remedy of disgorgement of fees. Respondents contend this remedy is barred by the doctrines of res judicata and/or collateral estoppel, because the guardianship was terminated, the fees in question were approved, and no appeal or other challenge was taken.

■ ■ ¶26 While no Washington court has directly applied the doctrine of res judicata to a final guardianship order, it does apply to probate orders.[28] For purposes of our discussion, we assume the doctrine may apply.[29] It does not, however, apply here.

¶27 Res judicata bars relitigation when an issue has been definitively adjudicated; it does not apply where a plaintiff's right to recover damages is "plainly reserved from adjudication."[30] Concerns about the manner of Smith's death were brought to the attention of the court at the time of the final accounting in the guardianship. Based upon the arguments of the parties and the recommendation of the GAL, the court expressly reserved the issue of the circumstances of Smith's death. The order approving the guardians' report and terminating the guardianship states:

(1) The annual report and final report, *but for the issue of the circumstances of Pauline Rae Smith's death,* are approved as proper. The guardians have discharged their trust with relation to the accounting, receipts, and expenditure, and investments;

(2) The guardianship of the person and estate of Pauline Rae Smith is terminated;

---

[28] *Bostock v. Brown*, 198 Wash. 288, 292, 88 P.2d 445 (1939).

[29] *See* RCW 11.92.053 (the order settling the guardianship account "shall be final and binding upon the incapacitated person").

[30] *Case v. Knight*, 129 Wash. 570, 574, 225 P. 645 (1924).

(3) *Except as stated in Paragraph 1, and except as to any actions against them which are preserved, the guardians are discharged* along with their agents, including the firm of Thompson & Howle.[31]

¶28 The guardianship court thus expressly reserved issues relating to Smith's death from its adjudication, and preserved "any actions" against the guardians. The fees approved were for their acts as guardians. Claims for breach of fiduciary duty are thus not barred by res judicata.[32]

¶29 The coguardians owed a fiduciary duty to Smith.[33] The Estate contends GSS breached this duty by providing negligent care. This is a question of fact not yet developed below. The trial court erred in dismissing the claims against GSS.

¶30 The Estate's claim against Watkins is less clear. Cummings alleges he breached his fiduciary duty by appearing "not to have faithfully fulfilled his duties as Smith's coguardian."[34] In essence, she contends he should have more effectively supervised and monitored the care provided by coguardian GSS.[35] In his motion for summary judgment below, however, Watkins argued only that Cummings' claims were barred because res judicata and collateral estoppel barred the remedy of disgorgement of fees, and since Smith had no statutory beneficiaries, her

---

[31] Clerk's Papers at 488-89 (emphasis added).

[32] For the same reasons, collateral estoppel does not apply. *See Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 508, 745 P.2d 858 (1987); *Hanson v. City of Snohomish*, 121 Wn.2d 552, 561, 852 P.2d 295 (1993).

[33] "'A fiduciary is a person with a duty to act primarily for the benefit of another.'" *Guarino v. Interactive Objects*, 122 Wn. App. 95, 128, 86 P.3d 1175 (2004) (quoting *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 741-42, 935 P.2d 628 (1997)).

[34] Appellant's Br. at 27.

[35] Watkins had been Smith's attorney since 1984, and was apparently the only person who took an interest in Smith as she aged. He sought assistance from her family when her health declined and she needed a guardian. Family members were unable or unwilling to step in, so Watkins did as his client asked, and became coguardian. He visited her regularly until she no longer recognized him and his visits caused her anxiety. It is unclear exactly what malfeasance or misfeasance is alleged against him.

estate could claim no other damages. As discussed above, these arguments fail. Given the arguments made, the court erred in dismissing Cummings' claim against Watkins.

¶31 As to Saucedo and Sambataro, however, the Estate points to no evidence of a fiduciary relationship. Performance of caregiving tasks such as dressing a client, cooking, and housekeeping does not establish a fiduciary relationship.[36] The claims against Sambataro and Saucedo for breach of fiduciary duty were properly dismissed.

¶32 Suzanne Howle and her law firm, Thompson and Howle, represented Watkins and GSS in connection with Smith's guardianship. The Estate claims Howle breached her duty of loyalty to the beneficiaries of Smith's estate by enabling Watkins "to secure his appointment as personal representative of the estate knowing full well that his occupancy of that post prevented an independent person from being able to begin scrutinizing the circumstances of Smith's death."[37]

¶33 In *Trask v. Butler*,[38] the Washington Supreme Court considered whether an attorney hired by the personal representative of an estate owes a duty of care to an estate beneficiary, and devised a six-part balancing test. Applying that test in *Hetzel v. Parks*,[39] we held an intent to benefit the beneficiaries[40] is a threshold requirement.[41]

¶34 Watkins was named in Smith's will as her personal representative. Howle's act in presenting the court with the

---

[36] *In re Estate of Esala*, 16 Wn. App. 764, 767, 559 P.2d 592 (1977) (involvement in deceased's business and financial affairs sufficient to establish fiduciary relationship); *Doty v. Anderson*, 17 Wn. App. 464, 468, 563 P.2d 1307 (1977) (same); *Kolze v. Fordtran*, 412 Ill. 461, 107 N.E.2d 686, 690 (1952) (caretaking assistance during decedent's illness not enough to establish a fiduciary relationship); *McGlaughlin v. Pickerel*, 381 Ill. 574, 46 N.E.2d 368, 373 (1943) (same).

[37] Appellant's Br. at 23.

[38] 123 Wn.2d 835, 872 P.2d 1080 (1994).

[39] 93 Wn. App. 929, 971 P.2d 115 (1999).

[40] Although Cummings is Smith's personal representative, this argument claims a breach of loyalty to the estate beneficiaries, so the estate beneficiaries are the plaintiffs for purposes of the *Trask* analysis.

[41] *Hetzel*, 93 Wn. App. at 936.

appointment papers carried out the intent of the deceased; it was not an act intended to benefit the heirs.[42] Cummings complains that Howle should have informed the court of Watkins' potential conflict of interest. In fact, in the petition seeking to admit the will to probate and obtain Watkins' appointment as personal representative, Howle alerted the court to the possible conflict in the first paragraph: "Questions could potentially be raised regarding the manner or circumstances of the death of [Smith]. . . . Such questions could potentially give rise to a conflict of interest. . . . The court should determine if the nominated personal representative should be appointed given this potential conflict."[43] Once the GAL recommended that Watkins be replaced as personal representative, neither Howle nor Watkins objected, and Howle prepared the necessary papers.

¶35 Nothing in Howle's actions suggests the existence of any duty to the estate beneficiaries, or that any conceivable duty was breached. The court did not err in dismissing claims against Howle and her law firm.

### 42 U.S.C. § 1983 Claims

¶36 Cummings asserted claims against GSS, Saucedo, Sambataro, and Watkins under 42 U.S.C. § 1983[44] for failing to protect Smith from deadly harm.[45] The court

---

[42] Cummings' reliance on *In re Disciplinary Proceeding Against Vetter*, 104 Wn.2d 779, 711 P.2d 284 (1985), *In re Estate of Larson*, 103 Wn.2d 517, 694 P.2d 1051 (1985), and *In re Disciplinary Proceeding Against Fraser*, 83 Wn.2d 884, 523 P.2d 921 (1974) for the proposition that a lawyer owes an actionable duty of loyalty to a nonclient is unavailing. *Trask* supersedes these lawyer discipline cases, and expressly dismisses *Vetter* and *Larson* for failing to apply the balancing test. *Trask*, 123 Wn.2d at 845.

[43] Clerk's Papers at 449.

[44] 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, [or] regulation . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[45] Cummings relies chiefly on *Braam v. State*, 150 Wn.2d 689, 81 P.3d 851 (2003), where the court held that children in foster care have a substantive due

dismissed these claims, ruling that the defendants were not acting under color of state law. This ruling was correct.

¶37 The elements of a § 1983 claim are a deprivation of constitutional rights, resulting from acts occurring "under color of state law."[46] Merely private conduct, no matter how wrongful, is excluded from the reach of § 1983.[47] A private actor may, however, act under color of state law for purposes of § 1983 if he or she willfully participates in joint action with the state or its agents.[48] Cummings contends the court-ordered guardianship provides the necessary state action.

¶38 No Washington court has directly addressed this issue, but the Ninth Circuit has held that a guardian acting pursuant to a court order is not acting under color of state law. In *Taylor v. First Wyoming Bank, N.A.*,[49] a guardian obtained a court order placing the ward in a convalescent hospital. The ward brought a § 1983 claim against the guardian for deprivation of liberty. The court stated:

> Here the state is not responsible for the care of the mother and is not providing for her care. The mother is in no sense a ward or responsibility of the state. The guardian, in the performance of her duties, was not participating in joint action with the state or acting for the state or serving a public function. Her actions did not constitute the exercise of power traditionally associated with sovereignty or reserved to the state.[50]

---

process right to be free from unreasonable risk of harm. We do not address whether such an analysis could provide the foundation for a 42 U.S.C. § 1983 claim, because we hold that GSS and Watkins were not state actors for purposes of § 1983.

[46] *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999).

[47] *Id.* at 50.

[48] *Kuehn v. Renton Sch. Dist. No. 403*, 103 Wn.2d 594, 602, 694 P.2d 1078 (1985).

[49] 707 F.2d 388 (9th Cir. 1983).

[50] *Id.* at 390.

We agree. A guardian is not a state actor merely because he or she is acting under court supervision or pursuant to a court order.

¶39 Cummings points to *Thomas S. v. Morrow*[51] and *In re Guardianship of L.W.*,[52] but her reliance is misplaced. In *Morrow*, the defendant guardian was an adult mental health specialist employed by the North Carolina department of human resources. It appears he was appointed because of his employment. As guardian, he worked closely with state agencies to secure the ward's residential placement and treatment regimen, which was the subject of the § 1983 claim. In *L.W.*, the court confronted the narrow question of the ability of a court-appointed guardian to refuse life sustaining treatment for the ward.[53]

¶40 By contrast, Cummings points only to the court's "close and ongoing supervision of the co-guardians."[54] But the court did not engage in joint action with the guardians. Its role was limited to that of routine judicial oversight in a guardianship. As the United States Supreme court has stated, "[a]ction taken by taken by private entities with the mere approval or acquiescence of the State is not state action."[55] Were we to accept Cummings' theory of state action, every court appointee would have potential § 1983 liability. We are entirely confident this is not what Congress intended.

¶41 Mere supervision by a superior court is not sufficient for a finding that an appointed guardian was acting under color of state law. Summary judgment dismissing the Estate's § 1983 claims was proper.

---

[51] 781 F.2d 367 (4th Cir. 1986).

[52] 167 Wis. 2d 53, 482 N.W.2d 60 (1992).

[53] *L.W.*, 482 N.W.2d at 63 ("We stress that this opinion is limited in scope to persons in a persistent vegetative state.").

[54] Appellant's Br. at 32-33.

[55] *Am. Mfrs.*, 526 U.S. at 52; *see also Flagg Bros. v. Brooks*, 436 U.S. 149, 164, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978) ("This Court . . . has never held that a State's mere acquiescence in a private action converts that action into that of the State.").

¶42 We affirm the orders granting summary judgment of dismissal as to all the Estate's claims regarding Howle, Sambataro and Saucedo, the § 1983 claims as to all respondents, and the abuse of vulnerable adults act claims as to all respondents. We reverse the orders granting summary judgment of dismissal of breach of fiduciary duty claims against Watkins and GSS, and the CPA claim against GSS, and remand for further proceedings consistent with this opinion.

¶43 Affirmed in part, reversed in part, and remanded.

¶44 The balance of this opinion having no precedential value, the panel has determined it should not be published in accordance with RCW 2.06.040.

Cox, C.J., and SCHINDLER, J., concur.

After modification, further reconsideration denied September 13, 2005.

Review denied at 157 Wn.2d 1006 (2006).