# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Vulnerable Adult Petition for<br><br>ROBERT J. BOSONE.<br><br>ROBERT J. BOSONE, Jr.,<br><br>    Appellant/Cross Respondent<br><br>      v.<br><br>ANN LONGINOTTI,<br><br>    Respondent/Cross Appellant | No. 76777-1-I<br>(consolidated with<br>No. 76816-6-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: March 18, 2019 |

APPELWICK, J. — Robert "Bobby" Bosone filed a VAPO naming Ann Longinotti as respondent. Ann filed a guardianship action in favor of her father Robert "Buzz" Bosone.[1] She also petitioned for a vulnerable adult protection order (VAPO) naming her brother Bobby as respondent. The trial court dismissed both VAPO petitions and ordered the parties to address their concerns via the guardianship action. The trial court also awarded costs to Bobby related to Ann's substitution of counsel during the proceedings. Bobby appeals dismissal of his VAPO petition. Ann appeals and Bobby cross appeals the cost award. We affirm

---

[1] For convenience and clarity, this opinion refers to the elder Robert Bosone as "Buzz," the younger Robert Bosone as "Bobby," and Buzz's daughter as "Ann."

dismissal of the VAPO petition and remand for a hearing regarding the basis of the cost award.

## FACTS

Buzz is 90 years old and has two living children: his son Bobby and his daughter Ann. While in good health, Buzz gave Bobby a durable power of attorney.

In 2015, after a fall Buzz developed dementia. In January 2016, Buzz moved to Ashley Gardens, an assisted living facility in Mount Vernon. Ann and Bobby began to jointly manage their father's affairs. Conflict soon followed.

In 2016, Ann filed a VAPO petition against Bobby alleging financial mismanagement. Following an evidentiary hearing in late 2016, Ann voluntarily moved to dismiss her petition. The trial court granted the motion. That VAPO petition is not at issue in this appeal.

On January 19, 2017, Ann filed a second VAPO petition against Bobby. The petition alleged that Bobby had compromised Buzz's health by removing him from Ashley Gardens and returning him to his home in Anacortes under Bobby's supervision. The following day, Ann also filed a guardianship petition. On January 27, Bobby filed a VAPO petition alleging that Ann had engaged in financial impropriety regarding Buzz's assets. The court entered temporary orders of protection on both VAPO petitions. Buzz was returned to Ashley Gardens.

On February 1, 2017, the parties convened for an evidentiary hearing regarding Ann's VAPO petition against Bobby. Ann was represented by her counsel David Neubeck. Bobby was represented by his counsel Tom Seguine.

2

Neubeck began by requesting a continuance on Ann's VAPO petition hearing:

> Our position is, your Honor, we'd like to have the temporary order continued. We filed a guardianship in this matter, and we would like to have the Guardian Ad Litem cross appointed, make an investigation as part of the guardianship and VAPO matter, and report back to the Court on that.
>
> We feel the restrictions, at this point, are not onerous. They just require supervised visitation for Mr. Bobby Bosone, as well as there are some restrictions on his finances and we can clarify those for the Court.

Seguine asserted that the terms of the temporary order were onerous. Neubeck responded that the temporary VAPO restrictions should remain in place pending appointment of a guardian ad litem (GAL) for Buzz.

The trial court ruled that it would keep the temporary VAPO order in place pending proceedings in the guardianship action:

> Well, what I'm wondering is about relaxing those conditions, keeping this order at some level in place just to, one, make sure that senior Bosone stays at Ashley Gardens until a guardianship can at least be explored or not. And if he's willing to agree to that, the Court does need to keep jurisdiction in order to keep that order in place and then I would be happy to look at possibly loosening the visitation requirements, assuming that the father's in a facility where there's other folks around.
>
> . . . .
>
> . . . I'm only talking about continuing a temporary order, not making a finding that that order has a valid basis and then letting the guardianship have some time to explore. Because the allegation, at least, was that he was trying to move this man out of there and potentially risking his health.

3

Seguine moved to deny the motion for a continuance, stating that he was ready to proceed with the hearing. The court decided to allow the hearing to proceed:

> Well, like I said, I thought that perhaps by loosening things that that would be satisfactory on a short term basis until we got a guardianship looking into it. But, Mr. Seguine, but if you're strongly objecting to that, I'll be happy to hear this hearing in a little while.

Both parties presented evidence at the hearing, but were unable to finish, so the court ordered a recess. The court reissued the temporary VAPO orders, with modifications to allow the parties to visit Buzz at Ashley Gardens.

Stephen Schutt was subsequently appointed guardian ad litem (GAL) for Buzz.

On March 1, 2017, Neubeck and Seguine appeared for another hearing on Ann's VAPO petition against Bobby.[2] Neubeck, noting that the VAPO issues were inextricably intertwined with the guardianship issues, moved for a continuance so that all three matters could be heard by the same trial court judge with Buzz's GAL present. Neubeck also indicated that a continuance was appropriate because Ann had retained a new attorney to defend against Bobby's VAPO petition, but he was not able to be present that day.

Seguine agreed that it made sense to have one judge hear all three matters. But, he opposed the continuance, arguing that Bobby would be prejudiced by further delay. The court agreed that the guardianship issues were "very much intertwined" with issues raised in the VAPO petitions. Therefore, the court

---

[2] Seguine made several references to an additional hearing on February 8, 2017. No transcript of that hearing appears in the record before us in this appeal.

4

suggested "do[ing] what we're trying to do today, and that's combine all the cases, and they are so intertwined and spend one day perhaps on dealing with all of it and getting rulings on all of them and a plan going forward." The court granted Ann's motion for a continuance regarding Bobby's VAPO petition, but allowed the hearing to proceed regarding Bobby's defense against Ann's VAPO petition. The parties agreed to reissue the temporary VAPO orders. All three actions were subsequently preassigned to the same judge.

On March 14, 2017, Neubeck filed a notice of withdrawal and substitution of counsel indicating that Douglas Shepherd would replace him as counsel for Ann in litigating her VAPO petition against Bobby. On March 20, 2017, Shepard entered a notice of appearance as counsel for Ann.

On March 27, 2017, the parties appeared for a third evidentiary hearing. Present at the hearing were Bobby and his counsel Seguine, Ann and her counsel Shepherd, and Schutt the GAL for Buzz. Shepherd informed the trial court that he had substituted for Neubeck in all three matters. The trial court was surprised to hear that Neubeck had withdrawn from defending Ann against Bobby's VAPO petition mid-trial without the court's permission:

> THE COURT: How can you do that mid-trial? Did Mr. Neubeck not inform you that we were three quarters of the way through trial?
>
> MR. SHEPHERD: Yeah, he did.
>
> THE COURT: I've never seen that done before. The Court has to excuse someone mid-trial with the Court's permission. I don't think the attorneys can just say here you take the ball. How can you possibly know -- have you got a transcript?

MR. SHEPHERD: There's a transcript.

THE COURT: Have you read the entire transcript?

MR. SHEPHERD: No, I have not. I'm aware of it, though.

THE COURT: I'm more concerned about Mr. Neubeck not you at this point. But how does he just walk away from a trial, mid-trial and say take it from here?

MR. SHEPHERD: I don't think he wanted to be involved from the beginning, Your Honor.

THE COURT: Well, that's a different issue. I don't know if he can just -- I mean we've taken combined more than one day's worth of testimony after all is said and done or at least a full day's worth of testimony, and we haven't completed witnesses. I know that your client wished to have you on her case that her brother brought against her. But I never for a moment thought that Mr. Neubeck was just going to not show up.

Shepherd informed the court that he had moved in the guardianship proceeding to appoint a medical examiner and an attorney for Buzz, and to convert the VAPO proceedings into the guardianship:

> . . . I believe that with the filing of the guardianship and with the appointment of the Guardian ad Litem everything should be stayed until we get a report back to properly appoint a medical examiner, and we have a hearing as to what there should be, an independent guardian of the person of the estate. If there's some claims, which have been advanced and testified to as regards to missing money those belong to the 88-year-old man not either one of these children. So I'm wondering procedurally how to get here.

Seguine argued that dismissing Bobby's VAPO petition at this point in the proceedings would be prejudicial to his client. He asserted that there was no need to appoint counsel or obtain a medical examination because Buzz, while competent, had appointed Bobby to manage his affairs. He further argued that

Ann's VAPO petition should be dismissed with prejudice, voluntarily or not, because her new counsel was not ready to proceed.

Schutt opined that no further medical testimony was needed to establish that Buzz is incompetent. He asserted the need to appoint someone to make medical and financial decisions for Buzz. Schutt recommended that the court appoint Joel Bernardo.[3]

The trial court questioned whether, in light of the guardianship action, there was any benefit in maintaining the VAPO petitions:

> THE COURT: My question to you, Mr. Seguine, is now that I have all three matters before me in a sense dismissal or even a ruling on the vulnerable adult protection orders has very little weight while the guardianship is still pending. In other words, it trumps all of those and has the ability for restraining orders within it. And so I'm not sure it makes sense to proceed on those. In other words, what possible benefit, disposition, or remedy is available in the vulnerable adult petition, either one that isn't available under the guardianship?
>
> MR. SEGUINE: Well, I mean the problem here is, I guess it's a defensive kind of thing, Your Honor, but he's been under --
>
> THE COURT: Oh, agreed. If it's dismissed then there's no binding agreement against him that he's done anything wrong. If his against hers is dismissed then there's no finding that she's done anything wrong, and we look at the best interest of the father through the guardianship. . . .
>
> . . . I'm just wondering, regardless of any ruling, the guardianship is still there. And this is a man, and I guess it could be argued with the power of attorney, who doesn't need a guardian, and that's probably your position. But I also think that perhaps just the taking him home without proper notice and attempting to care for him, I'm not saying that he was harmed by that, but that procedure alone

---

[3] Bernardo was appointed in Buzz's trust as the arbitrator/mediator of any disagreements between Bobby and Ann regarding the trust. Schutt believed appointing Bernardo might help diffuse the tension between Bobby and Ann.

could raise the question of does this man need someone else looking out for him?

Financially we haven't gotten into those on either side of whether either one of the children is abusing the trust or not financially. And I would think the guardianship could also look at that.

. . . .

. . . I am just trying to look at what benefit in going forward on either one of these [VAPO petitions] and maybe we just agree to dismissals of both and focus on the guardianship and outcome for their father and any protections that may or may not be necessary.

Seguine was "troubled" by the court's proposal. Shepherd reiterated that these issues should be resolved within the guardianship, with an independent person appointed to decide whether any claims regarding misconduct of the children should be brought.

The trial court dismissed both VAPO petitions and ordered that matters relating to concerns raised in the petitions be resolved in the guardianship action:

Mr. Seguine, I do not feel I can go forward on the petition that we've taken a day's worth of testimony today. And I don't think it's prejudicial to your client for me to dismiss that with prejudice and end that process. I don't see any prejudice at all to your client. In fact, I do see that as a victory, if we want to call it, because the attorney of record mid-trial has decided to bow out. Or we call it the overriding authority of the guardianship that I believe all of the issues can be resolved under and all of the protections can be granted if any are necessary.

I am, therefore, dismissing Cause Number 17-2-00071-2, Ms. Longinotti's petition against her brother, Bobby Bosone. And I don't see any reason for your client in the vulnerable adult protection petition 17-2-00113-1 to go forward against her for the same reasons. All of the necessary protections and/or remedies are available under the guardianship. And in terms of use of assets, and time, and resources it seems to me that we should simply focus on the guardianship, and I will dismiss that case as well at this time with prejudice. And I will appoint an attorney, and I'll allow the current attorneys and Guardian ad Litem to discuss if they can come to an

agreement as to someone who can be appointed for Mr. Bosone, Buzz, Senior, and hopefully in a very limited cost to simply take a quick review of the situation and agree to most things. Then if they wish, get involved in recommendations for the guardianship if any. But I can't see continuing on the other matters at this point in time.

Seguine objected to dismissal of Bobby's VAPO against Ann, arguing that Bobby had a right to be heard just as Ann was. The court clarified that Bobby's allegations against Ann would be heard in the guardianship action:

What I want to make clear is that I'm not dismissing his allegations against his sister in terms of the guardianship. They will all still be heard, if necessary. So when you say I'm dismissing his case you are correct. But I'm not dismissing his concerns. I'm putting them in another venue if you will, or another cause number to be discussed there.

The court specified that testimony and evidence taken during the VAPO evidentiary hearings would be made part of the record in the guardianship proceeding. The court also ordered appointment of an attorney for Buzz.

Bobby subsequently moved for an award of attorney fees and costs totaling $29,605 pursuant to RCW 4.84.185, CR 11, chapter 11.96A RCW, chapter 74 RCW, CR 41, or CR 40. The trial court awarded $5,000 in costs to Bobby based on Neubeck's unannounced withdrawal.

Ann appealed the cost award. Bobby appealed dismissal of his VAPO against Ann and cross appealed the amount of the cost award.

DISCUSSION

I.   Vulnerable Adult Protection Order

Bobby argues that the trial court erred by dismissing his VAPO petition against Ann. We review a trial court's decision to grant or deny a protection order

9

for abuse of discretion. See In re Vulnerable Adult Petition for Knight, 178 Wn. App. 929, 936, 317 P.3d 1068 (2014). A trial court abuses its discretion when its decision is based on untenable grounds or is manifestly unreasonable. Johnson v. Horizon Fisheries, LLC, 148 Wn. App. 628, 636, 201 P.3d 346 (2009).

Bobby asserts that the dismissal was unreasonable and unfair because Ann forced him to defend himself against her allegations in two hearings, whereas Bobby was denied the same opportunity to present evidence against her. But, the purpose of the VAPO and guardianship statutes is to protect the interests of vulnerable adults, not the interests of those who seek to manage their care. "The real party at interest in a guardianship proceeding is the alleged incapacitated person and it is the trial court's duty to ensure that his interests are protected." In re Guardianship of Matthews, 156 Wn. App. 201, 210, 232 P.3d 1140 (2010). Similarly, "[t]he abuse of vulnerable adults act, chapter 74.34 RCW, was enacted in 1995 to provide protection and legal remedies to vulnerable adults living in the community but dependent on others for their care." Cummings v. Guardianship Servs. of Seattle, 128 Wn. App. 742, 749, 110 P.3d 796 (2005). "Both the Act and the guardianship statutes are concerned with the personal and financial health of vulnerable adults." Knight, 178 Wn. App. at 939. Here, the trial court reasonably determined that Buzz's interests would be best served via the guardianship proceedings, rather than via competing VAPO petitions between warring siblings.

Bobby's concerns about being deprived of an opportunity to advance his allegations against Ann are also unfounded. The trial court expressly stated that

Bobby will be able to bring these allegations in the guardianship proceeding. And, the court stated that the testimony and evidence from Ann's dismissed VAPO proceeding would be included in the record for the guardianship proceeding.

Bobby objected to the guardianship. His preferred outcome in these proceedings was to have Ann's VAPO petition against him dismissed and a VAPO entered against Ann, thereby allowing him to manage Buzz's affairs without Ann's interference under the durable power of attorney granted to him while Buzz was competent. Dismissal of the VAPO petitions may have deprived Bobby of the opportunity to seek this preferred outcome. But, it did not force him to waste resources or deprive him of his day in court. There is no prejudice.

Bobby also contends that there is no basis in the civil rules that would allow the court to "convert" VAPO petitions into a guardianship proceeding. We conclude that dismissal of both VAPO petitions was appropriate in light of the factual and procedural situation manifest in this case at the March 27, 2017 hearing. Ann initially filed her VAPO petition against Bobby contemporaneously with the guardianship petition. The vulnerable adult protection act provides immediate relief in the form of an emergency temporary order of protection during pendency of an action to establish a guardianship. RCW 11.88.045(5). Filing these actions at the same time is a common strategy. See Knight, 178 Wn. App. at 939.

By the time the March 27, 2017 hearing convened, the parties had agreed that the same trial court judge would hear all three matters. For the first time in the

proceedings, the procedural dilemma created by the competing VAPO petitions and the parallel guardianship proceeding came into sharp relief. This dilemma was exacerbated by the unexpected departure of Neubeck as counsel for Ann. Under the circumstances, the trial court's solution of dismissing both VAPO petitions and allowing the parties to litigate their concerns about Buzz's care via the guardianship proceeding was eminently reasonable.

Bobby further contends that the dismissal was procedurally flawed because Ann failed to file a written motion to dismiss with notice pursuant to CR 7(b)(1). But, that rule expressly provides that motions shall be made in writing "unless made during a hearing or trial." Id. Ann's motion to dismiss both VAPO petitions, raised at the hearing, does not compel us to reach a different result.

## II. Cost Award

Ann argues that the trial court had no legal basis to award costs to Bobby. She does not separately challenge the amount awarded. Bobby argues that the cost award was proper, but asserts that the trial court erred in refusing to award the full amount requested. Washington courts follow the American rule in not awarding attorney fees as costs unless authorized by contract, statute, or recognized equitable exception. City of Seattle v. McCready, 131 Wn.2d 266, 273-74, 931 P.2d 156 (1997). We review the legal basis for an award of fees or costs de novo. McConnell v. Mothers Work, Inc., 131 Wn. App. 525, 531, 128 P.3d 128 (2006).

Bobby's motion for attorney fees and costs proposed five alternative bases for an award: RCW 4.84.185, CR 11, RCW 11.96A.150, CR 40(d), and CR 41(d). The trial court stated that its $5,000 cost award was premised on Neubeck's unauthorized failure to appear at the March 27, 2017 hearing:

> But the one issue, and I think I was pretty clear on the last hearing when it happened was Mr. Neubeck was attorney of record for Ms. Longinotti. We were in the middle of a trial, he simply did not show up for the continuation of that trial where perhaps additional witnesses were going to be called, and suddenly Mr. Shepherd is put in the position of representing her.
>
> In my -- and I hate judges that do this -- but in my 36 years of practice in the criminal system and the justice system and the bench, I have never seen an attorney without court's approval simply not show up in the middle of trial and hand it off to someone who was not even present during the testimony. And that action forced my hand, which may or may not have been going in the same direction, to say let's incorporate that into the guardianship. Let's make sure we fully vet these issues, but we could not possibly complete that trial without counsel who started the trial being present.
>
> And for that reason and that reason alone, not Mr. Shepherd but Mr. Neubeck who never has reappeared or asked the Court to sign an order removing him from the case, the Court is imposing $5,000 costs from Ms. Longinotti to Mr. Bosone Jr. for that delay and that very unusual procedure.

The trial court specified that Ann's VAPO petition was filed in good faith, that the award was not based on anyone being a prevailing party and that the VAPO statute did not provide a basis for the award. The court also found that Seguine's "documentation of [his] time and [his] fees is legitimate." The court, however, expressly declined to specify its legal basis for the cost award:

> So except for the $5,000 costs and whatever label you want to put on those for forcing this court to terminate the trial and incorporate it into the guardianship because of failure of Mr. Neubeck

13

to appear at the hearing, and I believe Ms. Longinotti had some responsibility in that, those will be the only costs awarded.

There may be a valid basis to award fees or costs to Bobby. However, the record before us is insufficient to permit appellate review of the basis of the award or the reasonableness of the amount awarded. Accordingly, we remand to the trial court to specify its basis for the award as well as the amount awarded and to make any necessary findings.

Affirmed and remanded.

WE CONCUR: